1898

Lacey C. ELLIS, formerly Lacey C. Taylor, Appellant v. James G. TAYLOR, Respondent.

(427 S.E. (2d) 678)

Court of Appeals

*Kenneth C. Porter*, of *Porter and Rosenfeld*, of Greenville, *for appellant.*

*Jefferson V. Smith, Jr.*, of *Carter, Smith, Merriam, Tapp, Rogers & Traxler*, Greer, *for respondent.*

Heard Oct. 5, 1992; Decided Nov. 16, 1992.

Reh. Den. April 5, 1993.

GARDNER, Judge:

Lacey C. Ellis, formerly Lacey C. Taylor (the mother), brought this contempt action against her former husband, James G. Taylor (the father), for the cost of their son's college education. The parties had entered into a separation agreement in 1979. This agreement was incorporated in the divorce decree. The trial judge, construing the agreement, ordered the father to pay $10,000 per school year toward the education of James, Jr. Only the mother appeals. We affirm.

We reject the mother's contention that the trial judge erred in not requiring the father to pay all of the child's college expenses pursuant to the terms of the previous order. The agreement of the parties relating to the child's education was:

16. The Husband agrees to pay all reasonable expenses for college education for the children of the parties, including tuition, room and board, books, materials, and supplies to the extent that such expenses are not pro-

vided by any scholarship, grant or other assistance available to the children.

It is admitted that the cost of Presbyterian College is $13,200 per year before grants from the State of South Carolina. The record reflects that the wife applied for a state tuition grant, but was not eligible because her income was too high.

This case requires the construction of the agreement of the parties relating to the education of an adult child. The case calls for a revisit of the pertinent law relating to this subject.

This Court has a broad scope of review in family court matters, and may review the facts in accordance with its own view of the preponderance of the evidence. *Spires v. Higgins*, 271 S.C. 530, 248 S.E. (2d) 488 (1978).

South Carolina law imposes, under certain circumstances, a duty on divorced parents to contribute to their child's college education. *Risinger v. Risinger*, 273 S.C. 36, 253 S.E. (2d) 652 (1979).

In *Risinger* the Court established four factors for determining whether an emancipated child should be awarded education support:

> (1) the characteristics of the child indicate that he or she will benefit from college; (2) the child demonstrates the ability to do well, or at least make satisfactory grades; (3) the child cannot otherwise go to school; and (4) the parent has the financial ability to help pay for such an education.

*Id.* at 39, 253 S.E. (2d) at 653-54.

This Court subsequently added to these factors (1) the availability of grants and loans and (2) the ability of the child to earn income during the school year or on vacation. *Hughes v. Hughes*, 280 S.C. 388, 313 S.E. (2d) 32 (Ct. App. 1984).

All of the above cases relate to situations in which there were no agreements to provide a college education for an adult child. In the case of *In re White*, however, the parties agreed at the time of their divorce to provide for college expenses. 299 S.C. 406, 385 S.E. (2d) 211 (Ct. App. 1989). There we held that a parent can contractually obligate himself to support or pay the educational expenses of a child past majority. We also held that the agreement is not modifiable by the

court without the consent of the parties. *Id.* But, of course, *In re White* in no way changed the law relating to the construction of contracts. The construction of the agreement of the parties of this case is the major consideration of this decision.

We now turn to the construction of the agreement of the parties. The father argues that the world "reasonable" contained in the agreement, under his financial circumstances, required the child to attend a state-supported school. The father introduced evidence to the effect that the College of Charleston uses a budget for everything including living expense, personal expenses, tuition, room and board, books, spending, travel, etc. and that the total coast is $7,613 per year. The expert testified that the expense at Clemson University was $5,386 for tuition, room and board, plus books and other expenses of approximately $1,413. All this, argues the father, is to be compared to the cost at Presbyterian College of $13,200 per year, not including state grants. Despite all of this, we do not believe that it was the intention of the parties to exclude private colleges such as Wofford, Presbyterian and Furman. We, therefore, decline to hold that the world "reasonable" excludes private colleges. As will be later noted, however, the husband's argument is a factor for consideration in determining the circumstances surrounding the execution of the agreement as it relates to the situation of the parties at the time of signing the agreement and also as it relates to the circumstances of the parties when the time comes for the children to attend college.

We, however, hold that the word "reasonable" as used in the agreement, is not without meaning. We quote from the appealed order.

> Although the Defendant has substantial income, it is quite apparent that he has financially overextended himself and most probably in debt beyond his capacity to repay.
>
> It is unlikely that he could successfully borrow additional funds or service the payment requested thereon. Arriving at what should be the reasonable college expenses which the Defendant has to pay, I have to take into consideration the reality of the situation that exists and not the wisdom by which the Defendant has worked

himself into his present predicament.

Given all the circumstances, the Court is of the opinion that the Defendant's total obligation toward the support of his son, while he is a full time student at Presbyterian College, should be Ten Thousand Dollars ($10,000.00) per school year.

We agree with the meaning or connotation ascribed to the word "reasonable" by the trial judge. We further hold that the words "to the extent that such expenses are not provided by any scholarship, grant or *other assistance available to the children*" include loans by the college made available to the child attending college. [Emphasis ours.] In the case before us, Presbyterian College offered to lend the child $4,000 for the year under consideration at the time. We hold that an offer of a loan by a college is embraced by the words "other assistance available to the children."

Turning again to the word "reasonable," it is described in *Corpus Juris Secumdum* as being "a relative, generic term difficult of adequate definition." 75 C.J.S. *Reasonable* 634 (1952). Having read the discussion of the meaning of the word "reasonable" in *Corpus Juris Secumdum* and *Words and Phrases*, we are impressed by the trial judge's connotation of the word to the effect that the word means agreeable to reason under the facts and circumstances of the case before the Court. *See id; 36 Words and Phrases* 405 (1962). In construing the agreement of the parties, it is this court's duty to establish the intent of the parties at the time they entered into the agreement. This does not negate, in our opinion, consideration of the circumstances surrounding the situation at the time the amount of the contribution by the father must be determined.

The cardinal rule in interpretation or construction of contracts is to ascertain the intention of the parties and to give effect to the intention of the parties. To arrive at a correct conclusion as to the intention of the parties, it is proper that the contract be considered in the light of surrounding circumstances and words which admit of a more extensive or more restrictive signification must be taken in that sense which will best effectuate what is reasonable to suppose was the real intention of the parties. *Mingus v. Broom*, 203 S.C. 450, 27 S.E. (2d) 801 (1943).

We hold that the agreement before us when it was entered into clearly envisioned a time in the future when the children might attend college. Thus, the circumstances surrounding the situation at that time are relative to the inquiry before us.

We also hold the word "reasonable," as used in the agreement before us, includes the ability of the child to contribute to his own education. If this were not true, the Court, in *Hughes v. Hughes,* would not have required consideration of the factors of (1) the availability of grants and loans and (2) the ability of the child to earn income during his school year or on vacation. 280 S.C. 388, 313 S.E. (2d) 32 (Ct. App. 1984). There, this Court obviously considered it reasonable to require the consideration of these two factors.

There is evidence of record that James, Jr. saved approximately $3,000 during the summer before entering Presbyterian College. As we have noted above, we hold that the availability of loans and the ability of the child to earn income during the school year or on vacation are factors which are brought into play by the very terms of the agreement, including the word "reasonable" as used in the agreement. In view of the law as announced by the above legal authorities and our holdings herein, we hold that the trial judge did not abuse his discretion in requiring that the husband pay $10,000 per year for the college education of his son, James, Jr. We, accordingly, reject this contention.

We find that the other two questions presented by the wife in this appeal are manifestly without merit. The wife argues that the contract required the father to continue paying child support for James, Jr. beyond the time when he reaches 18 years of age. The Family Court can always modify agreements concerning child support of a minor child. *Moseley v. Mosier,* 279 S.C. 348, 306 S.E. (2) 624 (1983). A fortiori the Family Court can always terminate agreements concerning child support for an emancipated child who is not disabled. We hold that the attorney fees awarded were well within the discretion of the trial judge.

For the above reasons, we affirm the appealed order.

Affirmed.

LITTLEJOHN, Acting Judge, concurs and GOOLSBY, J., dissents in separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent.

The family court seems to have based its decision to reduce Mr. Taylor's contractual obligation to pay the reasonable expenses of his son's college education on Mr. Taylor's changed financial condition. It concluded that Mr. Taylor, since the parties' divorce, "has financially overextended himself and [is] most probably in debt beyond his capacity to repay." Perhaps so. But as Judge Gardner observed in *In re White*, 299 S.C. 406, 413, 385 S.E. (2d) 211, 215 (Ct. App. 1989), an opinion in which I concurred, "[A] parent can contractually obligate himself to support or pay the educational expenses of a child past majority [and] such an agreement is not modifiable by the court without the consent of the parties." Here, there was no consent to modify the agreement; therefore, Mr. Taylor should be required to live up to his agreement, no matter what his present financial condition.

Mr. Taylor entered into a property settlement agreement with Mrs. Ellis in 1978 wherein he agreed to pay "all reasonable expenses for college education for the children of the parties, including tuition, room and board, books, materials, and supplies to the extent that such expenses are not provided by any scholarship, grant or other assistance available to the children." The family court incorporated this agreement into its 1979 divorce decree. Although Mr. Taylor had no legal obligation at the time of the agreement "to pay all reasonable expenses" for an emancipated child's education less amounts "provided by . . . scholarship, grant or other assistance," he chose, as he was perfectly free to do, to obligate himself to pay these expenses in the future. *In re White*, 299 S.C. at 413, 385 S.E. (2d) at 215; *see Ratchford v. Ratchford*, 295 S.C. 297, 368 S.E. (2d) 214 (Ct. App. 1988) (a parent can contractually obligate himself or herself beyond the child support requirements imposed by law).

The majority, under the guise of interpretation, clearly remakes the agreement in question, an agreement which is not ambiguous and which the majority does not recognize as being such. The agreement, as remade by the majority, requires, in addition to "amounts provided by . . . scholarship, grant or other assistance," amounts of income that the child has the

"ability" to earn and of loans that are available to the child be deducted from the amount needed for a child's college education in order to determine the amount Mr. Taylor must pay as "reasonable expenses."

The agreement, as remade by the majority, turns the agreement to which the parties had agreed completely on its head. Previously, the amount of "reasonable expenses" were to be determined before any deductions were to be made. Now, deductions are to be used to determine what amount represents the "reasonable expenses" for which Mr. Taylor will be responsible for paying.

One other thing, nothing in the agreement that the parties made for themselves requires the deduction from "reasonable expenses" or amounts that a child might earn and borrow. The parties' agreement speaks in terms of "scholarship, grant or other assistance" and not in terms of earnings and loans. *See* 17A Am. Jur. (2d) *Contracts* § 368, at 389 (1991) ("In contract . . . construction, the rule is usually applicable that where no intention to the contrary appears, general words used after specific terms are to be confined to things . . . of the same kind or class as the things previously specified.").

I also do not agree with the majority's position regarding the issues of additional child support and attorney fees.

I would reverse.